UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04-CV-226-H

MICHAEL DODD                                                                                          PLAINTIFF

V.

DYKE INDUSTRIES, INC.                                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Dodd has sued his former employer, Dyke Industries, Inc., alleging breach of contract, fraud, and illegal pay practices in violation of Ky. Rev. Stat. §§ 337.055 and 337.060(2)(e). Defendant has moved for partial summary judgment, arguing that Count II of Plaintiff's Second Amended Complaint, which alleges fraud in the performance of Plaintiff's compensation plan, is barred by the statute of limitations contained in Ky. Rev. Stat. § 413.130(3).

The motion raises a number of difficult questions about the interaction of Kentucky's statute of limitations and its statute of repose as applied in fraud claims. In addition, the Court must consider the circumstances under which either Kentucky law or common law act to toll the limitations period or the period of repose for a fraud claim. For the reasons discussed below, the Court defines the scope of these statutes as applied here and the Court denies Defendant's motion for partial summary judgment.

I.

Plaintiff began work as a salesman for Defendant, a merchant wholesaler of building supplies such as lumber, plywood, and wood paneling, in 1987. Beginning on January 1, 1989, Plaintiff worked under the terms of a compensation plan ("Compensation Agreement"), which provided for payment of a draw of $2,083 per month, plus a commission supplement:

> A <u>Sales</u> <u>Commission</u> will be determined from the Net Sales billed to customers while assigned to each salesman.
>
> Net Sales equal Gross Sales, less Freight, Credit Memos, and Bad Debts.
>
> A) "Less Freight" means all warehouse sales will be reduced by a percentage (determined by Management) to cover the cost of all delivery expense.
>
> B) All Credit Memos issued to the assigned customers will be deducted from Gross Sales prior to computing the salesman's commissions.
>
> C) All Bad Debts will be determined by Management. The amount deducted from the Reserve will not exceed two times the commission on these sales.
>
> Full recovery of a Bad Debt will be shared with salesman on the same basis as deducted, net of collection expense.
>
> It is the Company's sincere hope that, with the diligent help of salesman, no deductions for Bad Debts will be necessary.
>
> SCHEDULE OF COMPENSATION
> A Commission of 15% of the Gross Profit on net shipments, less drawing account and any expenses paid to salesman, will be paid after the close of business each month on all shipments made to the assigned accounts. A Reserve of 25% will be withheld from Commissions each month, and will be paid after the close of business each calendar year.
>
> Gross Profit is determined by subtracting the cost from the net selling price. It is agreed and understood that Management has the

sole right to determine the cost of all items sold.

Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment, No. 04-226, Exhibit 2, at *1-2 (W.D. Ky. May 4, 2004). Defendant's calculation of such values as Bad Debts and Credit Memos is at the heart of the disagreement between the parties.

In 1995, Plaintiff alleges he began noticing abnormal figures on his sales reports. For example, he noted that despite having made sales during a given period, he was reported as being due a negative commission amount (i.e. owing Defendant money). Plaintiff alleges that he spoke to his supervisor about the matter, and the supervisor "kind of sluffed [sic] it off," telling Plaintiff that there must be "a credit issue." Plaintiff notes that his sales reports "looked skewed" throughout 1996 as well. In 1999[1] Plaintiff engaged in a transaction (the "Ethington Stock Swap") during a month in which he had $12,000 or more in sales, yet his monthly sales report showed a negative gross profit of $1,000. After conferring with a colleague, Plaintiff alleges that he began to suspect that fraudulent accounting practices were being applied in the calculation of his gross profit. From this point on, Plaintiff "started looking and [the skewed payments] kept happening," to the point where Plaintiff noted that "you know, it doesn't take a genius to figure out what's going on."

Plaintiff voluntarily terminated his employment with Defendant in 2003 and filed a four-count complaint against Defendant in April 2004, which currently[2] alleges (I) breach of contract, (II) fraud in the performance of a contract, (III) violation of Ky. Rev. Stat. §337.055, and (IV)

---

[1] During Plaintiff's testimony, he initially stated that this date was 1996; he later corrected himself. Deposition of Michael Dodd at 280-81.

[2] Plaintiff filed a Second Amended Complaint on May, 25, 2006

3

violation of Ky. Rev. Stat. §337.060(2)(e). Defendant has moved for summary judgment on Count II, arguing that Ky. Rev. Stat. § 413.130(3), which imposes a 10-year statute of limitations on fraud claims, bars Plaintiff's fraud claim.

II.

Summary judgment is proper if the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) . In applying Rule 56(c) , a court views the evidence in a light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court properly enters summary judgment where there is not sufficient evidence in support of the non-movant's case upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

This is a state law claim and this Court applies Kentucky law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In determining Kentucky law only the decisions of the highest court of Kentucky bind this Court, *see Comm'r of Internal Revenue v. Bosch*, 387 U.S. 456, 465 (1967), but the holdings of other state courts, though they are not absolute predictors, may nevertheless be useful as indications of what the highest state court may do. *Id.*

III.

Fraud claims in Kentucky are governed by both a statute of limitations and a statute of repose. Both statutory and common law discovery rules may also affect the running of these two statutes. For proper context, the Court will discuss each relevant provision in turn.

Ky. Rev. Stat. § 413.120(12) requires that a fraud claim be brought within five years of the date of accrual of the claim. This is properly characterized as a statute of limitations, for it

4

"limit[s] the time in which a plaintiff may bring suit *after a cause of action accrues*," *McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 18 (Ky. 1990). Kentucky courts have said that a fraud action accrues when the victim discovers the fraud or through "the exercise of reasonable diligence should have discovered" the fraud. *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007); *see also, e.g., Hazel v. Gen. Motors Corp.,* 863 F. Supp. 435, 438 (W.D. Ky. 1994) (citing *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1983))*; Cali-Ken Petroleum Co., Inc. v. Miller*, 815 F. Supp. 216, 218 (W.D. Ky. 1993); *Perkins v. Ne. Log Homes*, 808 S.W.2d 809, 819 (Ky. 1991). As this Court has noted in the past, what the plaintiff must "discover" is not that he has a cause of action, but rather only that he has been injured at the hands of an identifiable party. *Hazel,* 863 F. Supp. at 438 (citing *Conway*, 644 S.W.2d at 334); *see also* 54 C.J.S. *Limitations on Actions* § 194 ("a limitations period generally begins to run when facts exist that authorize one party to maintain an action against another").

Ky. Rev. Stat. § 413.130(3) operates differently. In addition to codifying the discovery rule,[3] it imposes a 10-year limit within which a fraud claim must be brought. It is properly characterized as a statute of repose, for it "potentially bar[s] the plaintiff's suit *before the cause of action arises." McCollum,* 799 S.W.2d at 18; *see also Hogan v. Goodrich Corp.*, 2006 WL 149011 at *3 (W.D. Ky. Jan. 17, 2006) (characterizing § 413.130(3) as a statute of repose). This means a plaintiff's cause of action might be "destroyed before it legally existed," *McCollum*, 799 S.W.2d at 18, i.e. even if the plaintiff never learned of the fraud. *See, e.g.*, *Bowden v. City of Franklin*, 13 Fed. Appx. 266, 274 (6th Cir. 2001); *Hogan*, 2006 WL 149011 at *3; *Johnson v.*

---

[3] The statute reads, in pertinent part: "In an action for relief or damages for fraud or mistake, referred to in subsection (12) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake."

*Fetter*, 7 S.W.2d 241, 246 (Ky. 1928). No Kentucky court has questioned the statue's constitutionality, and indeed the statute has been viewed as being in accordance with Kentucky's constitution by at least one federal court. See *Hogan*, 2006 WL 149011, at *3.[4]

Ky. Rev. Stat. § 413.190(2) specifically addresses the statute of limitations on fraud claims, tolling those claims for any period during which the prosecution of the fraud is "obstruct[ed]" by the perpetrator "by absconding or concealing himself or by any other indirect means." *See Burke v. Blair*, 349 S.W.2d 836, 838 (Ky. 1961). While "concealment sufficient to toll a statute of limitations is concealment of the cause of action itself," *Hazel*, 863 F. Supp. at 439 (citing to, among others, *Lashlee v. Sumner*, 570 F.2d 107, 109-10 (6th Cir. 1978)), it is not clear how this "obstruction" principle would interact with § 413.130(3)'s statute of repose in all circumstances involving fraud, given the difficulty of envisioning a situation in which a cause of action for fraud could have accrued (i.e. been discovered), yet could have been "concealed" for the purposes of this provision. Perhaps due to this conceptual difficulty, Kentucky courts have by this Court's reckoning thus far only applied § 413.190(2) to "keep alive" a fraud claim beyond 10 years in the context of a fiduciary relationship, *Security Trust Co. v. Wilson*, 210 S.W.2d 336 (Ky. 1948),[5] and for reasons explained below, this Court finds it unnecessary to

---

[4]The *Hogan* court reiterated this conclusion in response to a motion to reconsider. *Hogan v. Goodrich Corp.*, 2006 WL 2056586, at *1 (W.D. Ky. March 1, 2006) ("Kentucky jurisprudence is clear that allegations of fraud must be brought within ten years of the perpetration of the fraud.").

[5]A situation in which the statute might more appropriately apply is that of a medical malpractice claim, which could conceivably *accrue*, in the sense that its elements had been discovered, but nevertheless be *obstructed* by the defendant via misrepresentations concealing the already-discovered facts of liability. *See, e.g., Adams v. Ison*, 249 S.W.2d 791 (Ky. 1952) (tolling the operative statute of limitations where a physician made misrepresentations sufficient to conceal the fact of liability). However, if no element of liability is concealed, the statute of limitations should not be tolled. *See, e.g., Hazel,* 863 F. Supp. at 439 (refusing to toll the applicable statute of limitations on a products liability claim where "the [plaintiff's] injury and the instrumentality causing the injury were obvious" at the time of the accident).

decide whether the statute is applicable to the facts before it.

IV.

A threshold question is when Plaintiff's cause of action accrued. In Count II of his Second Amended Complaint, Plaintiff alleges fraud in the performance of a contract, arguing that this fraud occurred during Defendant's performance on the Compensation Agreement. Defendant argues that any fraud worked upon the Plaintiff occurred only at the time the Compensation Agreement was entered into, and that therefore the statute of limitations on Plaintiff's claim began to run on or around January 1, 1989.[6] The Court is therefore presented with three possible dates on which it could begin the running of the statute of limitations; 1989, the date Plaintiff began working under the terms of the Compensation Agreement; 1995, the date on which Plaintiff first noticed irregularities in his commission payments; and 1999, the date on which Plaintiff asserts he "discovered" the alleged fraud.

A.

The Court finds no reasonable support for the earliest date - 1989. Neither the statutory language of Ky. Rev. Stat. §§ 413.120(12) and 413.130(3) nor the cases discussed above support the notion that the statute of limitations on a fraud <u>in the performance</u> claim necessarily begins to run at the time the contract is signed. Seemingly mistaking Plaintiff's claim for fraud in the <u>performance</u> for a claim of, perhaps, fraud in the <u>inducement</u>, Defendant includes in support of its statute of limitations argument the ambiguous statement that "[i]t does not matter when the Plaintiff discovered the fraud; rather, the relevant date is the first date at which the Plaintiff

---

[6]Defendant argues that the relevant date might actually have been December 10, 1988, when Plaintiff executed the Compensation Agreement. Defendant's Reply, No. 04-226 (W.D. Ky. August 7, 2007). For reasons discussed below, the Court views this distinction as irrelevant to its disposition of Defendant's motion.

7

could have theoretically brought suit for fraud." Defendant's argument mischaracterizes the discovery rule, which admittedly requires due diligence by Plaintiff, but does not make the date of discovery irrelevant. Rather, the law is clear that the statute of limitations for a fraud claim only begins to run once the cause of action accrues, i.e. once it is discovered or should have been discovered. *See, e.g., Cali-Ken Petroleum Co.*, 815 F.Supp. at 218.

Equally unavailing is Defendant's characterization of *Johnson*, 7 S.W.2d 241, and of the language of § 413.130(3) regarding the date on which the 10-year period begins to run, which overlook the threshold question of when Plaintiff's cause of action, as stated in Plaintiff's Second Amended Complaint, accrued. Plaintiff does not allege that the Compensation Agreement itself is fraudulent, but instead that Defendant's performance on it was fraudulent. As Plaintiff states in his brief, he is not seeking to escape the impact of the 10-year bar that would be imposed by Ky. Rev. Stat. § 413.130(3) on claims regarding the fraudulence of the Compensation Agreement, but rather to recover for the fraud in the performance of that Agreement that occurred within the 10-year period before he filed suit.

Also unsupportive of Defendant's argument is *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162 (2007), in which the United States Supreme Court noted in the context of an EEOC complaint that the limitations period "is triggered when a discrete unlawful practice takes place." *Id.* at 2169. It also stated that while (A) "a freestanding violation may always be charged within its own charging period," and (B) "if an employer engages in a series of acts each of which is intentionally discriminatory...a fresh violation takes place [with] each act," *id.* at 2174, it is nevertheless the case that "[a] new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail

8

adverse effects resulting from the past discrimination." *Id.* at 2169.

Unlike in *Ledbetter,* where the plaintiff claimed that each paycheck she received under a facially neutral pay scheme was part of one continuing violation of federal law, here Plaintiff alleges that in each pay period from 1995 forward Defendant committed a new and discrete fraud upon him by fraudulently manipulating his pay and affirmatively misrepresenting its actions to him. Thus Plaintiff is alleging facts fundamentally distinguishable from those in *Ledbetter*.

In sum, by pinning its statute of limitations argument to the 1989 date, Defendant is disputing a claim Plaintiff has not made. Plaintiff has not claimed that the Compensation Agreement of 1989 was fraudulent.[7] Rather, Plaintiff claims that as early as 1995, Defendant was fraudulently performing on the Compensation Agreement. Perhaps unsurprisingly given that Plaintiff's fraud claim only dates to 1995, all of the evidence before the Court indicates that Plaintiff had no reason to suspect that a fraud had been or was being perpetrated on him until at least 1995.

B.

The question of whether Plaintiff's claim accrued in 1995 or in 1999 is a closer one. By his own admission, Plaintiff noticed irregularities in his sales commission figures in 1995. Deposition of Michael Dodd at 112-13. Upon reporting these irregularities to his superiors, Plaintiff testifies that the issue was "sluffed [sic] off," and explained away as resulting from the issuance of a credit. *Id.* at 113. Though Plaintiff noticed subsequent "skewing" of his gross profit figures, *id.* at 114, he was apparently sufficiently placated by the explanations of his

---

[7]In support of its characterization of Plaintiff's claim, Defendant cites Plaintiff's testimony that he viewed the sales contract as fraudulent. Defendant's Reply, No. 04-226, at 7 (W.D. Ky. August 7, 2007). Reading Plaintiff's words in context, however, the Court views them as merely a retrospective statement without relevance to the issue of when Plaintiff's cause of action accrued, which is the relevant date for purposes of a fraud claim.

9

supervisors that he did not become suspicious that the alleged fraud was being worked on him until 1999.

While Plaintiff was under a duty to exercise due diligence to discover the fraud, *Perkins*, 808 S.W.2d at 819, it is impossible to avoid concluding that even greater diligence would have been fruitless. For example, Defendant's employee Kelly Clore testified that sales representatives "were not permitted to touch" company documents that would have revealed the allegedly fraudulent payment calculations and that "sales representatives were specifically advised" that their commission payments were calculated in a manner other than the one actually used. Similarly, Plaintiff's supervisor testified that he instructed employees not to inform sales representatives of figures that would indicate the company's allegedly fraudulent calculation of sales commission payments and that he implied to sales representatives directly that sales commission payments were calculated in a manner other than as they actually were. Finally, Defendant's Senior Cost Analyst testified that salesmen were not given access to any information from which they could determine the sorts of facts that provide the basis for Plaintiff's claim. The cumulative impact of this evidence is that the information asymmetry between Defendant and Plaintiff and Defendant's active ability to conceal were such that Plaintiff could not have "discovered" the basis for his fraud claim in 1995. This conclusion leaves 1999 as the date at which Plaintiff, by his own admission, "discovered" the basis for his fraud claim.

What is before the Court, then, is virtually uncontroverted evidence that Plaintiff brought a fraud claim within five years of his "discovery" of an alleged fraud that was initially perpetrated nine years before he brought suit. Thus by filing in April 2004, Plaintiff did not run

afoul of either Ky. Rev. Stat. § 413.120(12)'s 5-year statute of limitations or Ky. Rev. Stat. § 413.130(3)'s 10-year statute of limitations.

V.

The Court will also comment briefly on Plaintiff's argument that his claim of fraud in the performance could be characterized as a continuing tort due to the fact that the injuries he suffered were continuous and repeated, rather than the result of a single, discrete act of fraud. On this view, Plaintiff's cause of action would accrue "on the date of the last injury," and he could potentially recover "for the entire period" during which he was the victim of a fraud. 54 C.J.S. *Limitations of Actions* § 194. Plaintiff's cause of action would have accrued as late as 2003, when he left his employment and he would presumably then be permitted to recover for damages occurring within the statutory period prior to the "last injury" in 2003. *Id.*

Kentucky courts have recognized the applicability of the continuing tort doctrine in certain circumstances, *see Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604 (Ky. Ct. App. 2003) (applying the doctrine in the context of a trespass to land and intimating that a plaintiff might be able "to recover damages for injuries incurred outside of the limitation period preceding the filing of [his] complaint."); *see also Dixon v. Clem*, 404 F. Supp. 2d. 961, 967 (E.D. Ky. 2005). However, it is far from clear that the doctrine would apply to the facts before the Court, since by this Court's reckoning Kentucky courts have only applied the continuing tort idea in the context of a trespass to land, *See Dixon*, 404 F. Supp. at 967 (referring to *Rockwell* and refusing to extend the continuing tort doctrine to cover "an adverse employment decision based on fraud."). Additionally, expanding the doctrine to embrace fraud would require a belief that the 10-year bar on fraud claims was not intended to be absolute, a conclusion directly at odds with the cases

discussed above. *See, e.g., McCollum*, 799 S.W.2d at 18; *Hogan*, 2006 WL 149011 at *3.

Given that the Court does not find that Plaintiff's cause of action is time-barred and that the Court is reluctant to believe that Kentucky courts would so significantly expand the universe of continuing torts, the Court declines the invitation to rule on the issue where doing so is unnecessary to its disposition of this motion.

VI.

The parties are largely arguing past each other in their briefing on this motion, and have devoted many pages to disputing the issue of whether a fraud occurred, not whether, assuming (as this Court must) that the fraud Plaintiff alleges did in fact occur, his claim would be time-barred. Plaintiff's Second Amended Complaint reveals that Plaintiff is arguing that the fraud at issue was not the Compensation Agreement itself, but Defendant's performance thereon, beginning no earlier than 1995. All fraudulent performance within five years of Defendant's suit is clearly within § 413.120(12)'s time limit, and the claims from 1995 until 1999 are not barred due to the operation of the discovery rule and the fact that they do not fall outside § 413.130(3)'s 10-year limit.

Of course, at this stage of the proceedings, the Court expresses no view on the merits of Plaintiff's fraud claim, as this issue will be addressed in subsequent proceedings. The Court only finds that, viewing the evidence on the fraud claim in Plaintiff's Second Amended Complaint in the light most favorable to Plaintiff, the claim is not time-barred.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED.

cc: Counsel of Record